Kevin Laukaitis
Jonathan Shub
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Fax: (856) 210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Email:  ltfisher@bursor.com
            slitteral@bursor.com

*Attorneys for Plaintiffs and the Proposed Classes*
[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNE MATTHEWS, KELLY BALISTRERI, and SCOTT CRANDALL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MORTON & BASSETT SPICES,<br><br>Defendant. | Case No. 3:22-cv-00497-JD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jeanne Matthews, Kelly Balistreri, and Scott Crandall (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Defendant Morton & Bassett Spices ("Morton & Bassett" or "Defendant") on information and belief, except that Plaintiffs' allegations as to their own actions are based on personal knowledge.

## NATURE OF THE ACTION

1.      This action seeks to recover damages and injunctive relief for Defendant's continuing misrepresentations and failure to disclose to consumers that certain Morton & Bassett herbs and spices, including Morton & Bassett's Basil, Ground Ginger, Ground Thyme, and Turmeric (collectively, the "Products")[1], contain (or risk containing) lead, arsenic, and cadmium (collectively "Heavy Metals").

2.      A November 2021 report by Consumer Reports states that the offending herbs and spices, including the Products, "had high enough levels of arsenic, lead, and cadmium combined, on average, to pose a health concern for children when regularly consumed in typical servicing sizes. Most raise concern for adults, too."[2]

3.      Heavy Metals in foods pose a serious safety risk to consumers because they can cause cancer and serious and often irreversible damage to brain development as well as other serious health problems.

4.      As described more fully below, consumers who purchase the Products are injured by Defendant's acts, misrepresentations and omissions concerning the presence (or risk) of Heavy Metals.  No reasonable consumer would know, or have reason to know, that the Products contain (or risk containing) Heavy Metals.  Worse, as companies across the industry have adopted methods to limit heavy metals in their herbs and spices, Defendant has stood idly by with a reckless disregard for its consumers' health and well-being.  As such, Plaintiffs seek relief in this action individually and as a class action on behalf of all purchasers of the Products.

---

[1] Plaintiffs reserve the right to amend the definition of Products if discovery reveals that additional spice products may be affected.

[2] Lisa L. Gill, "Your Herbs and Spices Might Contain Arsenic, Cadmium, and Lead," *Consumer Reports* (Nov. 9, 2021), https://www.consumerreports.org/food-safety/your-herbs-and-spices-might-contain-arsenic-cadmium-and-lead/ (last accessed May 24, 2022).

## PARTIES

5.      Plaintiff Jeanne Matthews is a resident of Evanston, Illinois and a citizen of the State of Illinois.  Ms. Matthews purchased several of Defendant's Products over the class period, including Ground Cumin as recently as January 2022 from a retailer in Evanston, Illinois.  Prior to purchasing the Product, Plaintiff Matthews saw and relied upon the packaging of the Products.   Plaintiff Matthews believed she was purchasing quality and healthy spices that did not contain (or have a risk of containing) Heavy Metals.  Had Defendant disclosed on the label that the Product contained (or risked containing) unsafe toxic Heavy Metals, Ms. Matthews would have been aware of that fact and would not have purchased the Products or would have paid less for them.

6.       Ms. Matthews continues to desire to purchase the Products from Defendant. However, Ms. Matthews is unable to determine if the Products are actually safe.  Ms. Matthews understands that the composition of the Products may change over time.  But as long as Defendant continues to market its Products as safe, she will be unable to evaluate the different prices between Defendant's Products and competitor's products.  Ms. Matthews is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as quality and healthy spices, are in fact, safe and healthy spices.

7.      Plaintiff Kelly Balistreri is a resident of Carmel, California and a citizen of the State of California.   Ms. Balistreri purchased several of Defendant's Products over the class period, including Turmeric and Ginger as recently as approximately the spring of 2020 from a Safeway located in Carmel, California.  Prior to purchasing the Products, Plaintiff Balistreri saw and relied upon the packaging of the Products.  Plaintiff Balistreri believed she was purchasing quality and healthy spices that did not contain (or have a risk of containing) Heavy Metals. Had Defendant disclosed on the label that the Products contained (or risked containing) unsafe toxic Heavy Metals, Ms. Balistreri would have been aware of that fact and would not have purchased the Products or would have paid less for them.

8.      Ms. Balistreri continues to desire to purchase the Products from Defendant.  However, Ms. Balistreri is unable to determine if the Products are actually safe.  Ms. Balistreri understands that the composition of the Products may change over time.  But as long as Defendant continues to market its Products as safe, she will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's products.  Ms. Balistreri is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as a quality and healthy spice is, in fact, a safe and healthy spice.

9.      Plaintiff Scott Crandall is a resident of Redcrest, California and a citizen of the State of California.  Mr. Crandall purchased many of Defendant's Products over the class period, including Basil, Thyme, and Ground Ginger as recently as approximately December 2021from retailers located in Redcrest, Belmont, and Sunnyvale, California.  Prior to purchasing the Products, Plaintiff Crandall saw and relied upon the packaging of the Products.  Plaintiff Crandall believed he was purchasing quality and healthy spices that did not contain (or have a risk of containing) Heavy Metals. Had Defendant disclosed on the label that the Products contained (or risked containing) unsafe toxic Heavy Metals, Mr. Crandall would have been aware of that fact and would not have purchased the Products or would have paid less for them.

10.     Ms. Crandall continues to desire to purchase the Products from Defendant.  However, Mr. Crandall is unable to determine if the Products are actually safe.  Mr. Crandall understands that the composition of the Products may change over time.  But as long as Defendant continues to market its Products as safe, he will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's products.  Mr. Crandall is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as a quality and healthy spice is, in fact, a safe and healthy spice.

11.     Defendant Morton & Bassett Spices is a California corporation with its headquarters in San Francisco, California.  Defendant manufactures, markets, and sells herbs and spices, including

the Products, throughout California, Illinois, and the United States.  During the relevant period, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products.  Defendant therefore had complete control over how to label its Products as to their contents.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District, its headquarters are located within this District, two Plaintiffs reside within this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

14.     The practices described herein were conceived, reviewed, approved, and otherwise controlled from Defendant's nerve center, its headquarters in San Francisco, California.  Employees at Defendant's headquarters directed the production and manufacturing of the Products.  Promotional activities and literature were developed and coordinated at, and emanated from, Defendant's California headquarters.  For these reasons, and those listed next, the application of California law is appropriate for non-California residents as that activity amounts to injury in California.  Defendant made critical decisions concerning the marketing and advertising of the Products in California.  Misrepresentations and omissions alleged herein were made by Defendant's employees based in California and were contained, among other places on Defendant's website, which is maintained by Defendant's employees based in California.

# FACTS COMMON TO ALL CAUSES OF ACTION

**I.     Lead, Arsenic, and Cadmium Are Toxic**

15.     Lead, arsenic, and cadmium are heavy metals.  As described more fully below, the harmful effects of heavy metals are well-documented, particularly on children.  Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues.  Heavy metals also pose risks to adults.  Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.  As such, it is important to limit exposure.

16.     "No amount of lead is known to be safe."[3]  Exposure to lead may cause anemia, weakness, and kidney and brain damage.[4]  Lead can affect almost every organ and system in the body.  Lead accumulates in the body over time, and can lead to health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.  Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.  Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where it is stored.  Lead in bones may be released into the blood, re-exposing organ systems long after the original exposure.[5]

17.     Arsenic is also dangerous to humans.  "Arsenic is ranked first among toxicants posing a significant potential threat to human health based on known or suspected toxicity."[6]  Long term exposure is linked to cardiovascular disease.  Arsenic can also cause bladder, lung, liver, and skin

---

[3]     *See*     https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last accessed May 24, 2022).

[4] Centers for Disease Control and Prevention, "Health Problems Caused by Lead," *The National Institute for Occupational Safety and Health (NIOSH)*, https://www.cdc.gov/niosh/topics/lead/health.html#:~:text=Exposure%20to%20high%20levels%20of,a%20developing%20baby's%20nervous%20system. (last accessed May 24, 2022).

[5] State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," https://www.health.ny.gov/publications/2584.pdf (last accessed May 24, 2022).

[6] Christina R. Tyler and Andrea M. Allan, "The Effects of Arsenic Exposure on Neurological and Cognitive Dysfunction in Human and Rodent Studies: A Review," *Curr Environ Health Rep*. 2014; 1(2): 132-147, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4026128/ (last accessed May 24, 2022).

cancer, and strokes and diabetes.  Recent studies have suggested that arsenic may cause IQ deficits in children and may be harmful to fetal development as "even low concentrations of arsenic impair neurological function[.]"[7]  There is "essentially no safe level" of arsenic.[8]

18.     Cadmium is similarly harmful.  "[A]ny cadmium exposure should be avoided."[9]  Exposure to cadmium may lead to damage to kidneys, lungs, and bones.[10]  "Even relatively low chronic exposure can cause irreversible renal tubule damage, potentially progressing to glomerular damage and kidney failure" and "bone loss often is seen in concert with these effects."[11]  This metal is also known to cause cancer and targets the body's cardiovascular, renal, gastrointestinal, neurological, reproductive, and respiratory systems.[12]

## II.     Morton & Bassett's Products Contain Toxic Arsenic, Lead, and Cadmium

19.     In November of 2021, Consumer Reports published a report titled "Your Herbs and Spices Might Contain Arsenic, Cadmium, and Lead."  Employing the Analysis for Arsenic, Cadmium, Lead, and Mercury by Triple Quadruple Inductively Coupled Plasma Mass Spectrometry (IC-QQQ-MS), With Collision Cell, Consumer Reports determined that each of the Products contains toxic Heavy Metals.  Consumer Reports' samples were prepared and analyzed in accordance with the Association of Official Analytical Chemists (AOAC) Method 2015.01.

20.     Consumer Reports analyzed "126 individual products from national and private-label brands," including Morton & Bassett.[13]

---

[7] *Id.*

[8] *See* https://publicintegrity.org/environment/what-to-do-if-your-drinking-water-contains-arsenic/ (last accessed May 24, 2022).

[9] M. Nathaniel Mead, "Cadmium Confusion: Do Consumers Need Protection," *Environ Health Perspect*. 2010 Dec; 118(12): A528-A534, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 24, 2022).

[10] *See* Agency for Toxic Substances and Disease Registry, "ToxFAQs for Cadmium," Toxic Substances Portal, https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15 (last accessed May 24, 2022).

[11] Mead, *supra* note 7.

[12] *See* Occupational Safety & Health, "Cadmium," https://www.osha.gov/cadmium (last accessed May 24, 2022).

[13] *See n. 1, supra.*

1

2

3

4

21.     Consumer Reports determined that "[r]oughly one-third of the tested products, 40 in total, had high enough levels of arsenic, lead, and cadmium combined, on average, to pose a health concern for children when regularly consumed in typical serving sizes.  Most raised concern for adults, too."[14]

5

6

7

8

22.     The authors cautioned that "just one serving—3/4 teaspoons or more—per day leaves little room for heavy metal exposure from other sources" including in "fruit juice, baby food, and rice[.]"[15]  These latter food categories have also tested high for heavy metals and have been the subject of numerous lawsuits.

9

10

11

12

13

23.     With regards to the results, James E. Rogers, PhD, director of food safety and testing at Consumer Reports, remarked that "[w]hen people think about heavy metals in their diet, if they do at all, it's probably the lead in their drinking water or arsenic in their children's fruit juices or cereals . . . But our tests show that dried herbs and spices can be a surprising, and worrisome, source for children and adults."[16]

14

15

16

24.     Concerning the source of the heavy metals in herbs and spices, Consumer Reports stated that heavy metals may get into food, "including herbs and spices, during manufacturing—from processing equipment or packaging[.]"[17]

17

18

19

25.     Along these lines, Consumer Reports determined that "it is possible for herb and spice companies to limit heavy metals in their products" as "[a]bout two-thirds of the spices [Consumer Reports] tested did not have concerning levels of heavy metals."[18]

20

21

26.     Upon information and belief, Defendant fails to adequately test for Heavy Metals in its Products.

22

23

24

27.     Instead of adequately testing its Products, Defendant chose to ignore the health of the consuming public in pursuit of profit.

25

26

27

28

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

III.    **The Presence (or Risk) of Toxic Heavy Metals In Morton & Bassett's Products Far Exceeds Expectations of Reasonable Consumers**

28.     According to Global Market Insights, "[t]he demand for spices and seasonings has increased in recent years owing to their varied nutritional benefits."[19]  Indeed, "[m]ore Americans are considering the use of spices and herbs for medicinal and therapeutic/remedy use, especially for various chronic conditions" as "[t]here is now ample evidence that spices and herbs possess antioxidant, anti-inflammatory, antitumorigenic, anticarcinogenic, and glucose-and cholesterol - lowering activities as well as properties that affect cognition and mood."[20]  As such, the safety of herbs and spices that can be easily purchased to season such food, amongst others, is a material fact to reasonable consumers (such as Plaintiffs and the Class members).

29.     Given the negative effects of toxic heavy metals (such as arsenic, lead, and cadmium) on child development and adult health, the presence of these substances in food is a material fact to reasonable consumers, including Plaintiffs and members of the Class.

30.     Defendant knows that the safety of its herbs and spices (as a general matter) is a material fact to reasonable consumers, as demonstrated below.

31.     As such, Defendant also knows that the presence (or risk) of toxic Heavy Metals in its herbs and spices is a material fact to reasonable consumers, including Plaintiffs and the Class members.

32.     A consumer survey confirms that purchasers of spices consider it important to know if there are Heavy Metals (or the risk of Heavy Metals) in the products even in small amounts. Plaintiffs' counsel conducted a nationwide survey of just over 500 adult consumers who bought spices, including Defendant's spices, within the past two years.[21]  The vast majority (approximately

---

[19] Global Market Insights, "North America Seasonings Market to Exceed $5bn by 2027," *Press Releases* (Oct. 22, 2021), https://www.gminsights.com/pressrelease/north-america-seasonings-market?utm_source=globenewswire.com&utm_medium=referral&utm_campaign=Paid_globenewswire (last accessed May 24, 2022).
[20] T Alan Jiang, "Health Benefits of Culinary Herbs and Spices," *J AOAC Int*. 2019 Mar 1; 102(2): 395-411, 10.5740/jaoacint.18-0418 https://academic.oup.com/jaoac/article/102/2/395/5658185 (last accessed May 24, 2022).
[21] The survey included 503 participants over the age of 18, 259 of whom were female, 242 of whom were male, and 2 of whom were non-binary.  Some 67 percent of the participants were from the following states, with a minimum of 3% (15 participants) each:  Arizona, California, Florida,

---

94%) answered that the presence or risk of even a small amount of Heavy Metals in the spices would be either important or very important to their purchasing decisions.[22]

33.     Herbs and spices manufacturers (such as Defendant) hold a special position of public trust. Consumers believe that they would not sell products that are unsafe.

34.     Defendant knew that if the presence (or risk) of toxic Heavy Metals in its herbs and spices was disclosed to Plaintiffs and the Class members, then Plaintiffs and the Class members would be unwilling to purchase them or would pay less for them.

35.      In light of Defendant's knowledge that Plaintiffs and the Class members would be unwilling to purchase the Products or would pay less for the Products if they knew that they contained (or risked containing) toxic Heavy Metals, Defendant intentionally and knowingly concealed this fact from Plaintiffs and the Class members and did not disclose the presence (or risk) of these toxic Heavy Metals on the labels of the Products.

36.     Defendant knew or should have known that Plaintiffs and the Class members would rely upon the packages of the Products and intended for them to do so but failed to disclose the presence (or risk) of Heavy Metals.

37.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Products, which it failed to do.

38.     Additionally, Defendant knew or should have been aware that a reasonable consumer would consume the Products multiple times each day, and possibly multiple Products.  This leads to repeated exposure to the Heavy Metals.

---

Illinois, Maryland, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Washington.  The remaining approximately 33 percent, with a minimum of one participant each, were from the following states: Alabama, Alaska, Arkansas, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, Oklahoma, Oregon, South Carolina, Tennessee, Utah, Virginia, West Virginia and Wisconsin.

[22] The question in the survey was as follows:  "A November 2021 report of an investigation by Consumer Reports reveals that certain brands of particular herbs and spices contain heavy metals consisting of lead, arsenic, and/or cadmium.  Please select how important, if at all, would it be to your purchasing decision if the spice(s) you purchased contained, or risked containing, even a small amount of the heavy metals previously described?"  The response choices provided were as follows:  Not at all important; important; very important.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

39.     Defendant knew or should have known it could control the levels of Heavy Metals in the Products by properly monitoring the ingredients for Heavy Metals and adjusting any formulation to reduce or eliminate ingredients that contained or may contain higher levels of Heavy Metals.

40.     Prior to purchasing the Products, Plaintiffs and the Class members were exposed to, saw, read, and understood Defendant's labels, and relied upon them in purchasing the Products, but Defendant failed to disclose the presence (or risk) of Heavy Metals.

41.     As a result of Defendant's concealment of the fact that the Products contained (or risked containing) toxic Heavy Metals, Plaintiffs and the Class members reasonably believed that Defendant's Products were free from substances that would negatively affect children's development as well as their own health.

42.     In reliance upon Defendant's labels that contained material misrepresentations and omissions, Plaintiffs and the Class members purchased Defendant's Products.

43.     Had Plaintiffs and the Class members known the truth—*i.e.*, that the Products contained (or risked containing) toxic Heavy Metals, rendering them unsafe for consumption by children and adults—they would not have been willing to purchase them or would have paid less for them.

44.     Therefore, as a direct and proximate result of Defendant's misrepresentations and/or omissions concerning the Products such as those on the packaging as set out below, Plaintiffs and the Class members purchased the Products.

45.     Plaintiffs and the Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products. Since the presence (or risk) of toxic Heavy Metals in herbs and spices renders them unsafe for human consumption, the Products that Plaintiffs and the Class members purchased are worthless or are worth less than Plaintiffs and the Class paid for them.

46.     Defendant's label misrepresentations and omissions at issue in this Complaint are put in context by its website, where Defendant prominently touts the safety and quality of its Products.

47.    For example, Defendant claims directly on its website that "Our top priority has always been food safety."[23]

48.    Defendant further states on its website that "Morton & Bassett purchases only lot specific products that are laboratory tested to ensure product cleanliness and safety for our customers."[24]

49.    Defendant also claims on its website that "We maintain close relationships with our farmers and harvest teams to ensure the best quality."[25]

50.    Defendant then goes a step further claiming on its website that "We're Certified For Quality And Safety."[26]

51.    Defendant further states on its website that "Our top priority has always been food safety.  We continue a strict program of quality assurance, packaging, sterilization, and testing that is far beyond the industry standards.  We source only from spice suppliers around the world that share our commitment to the best quality available."[27]

52.    Defendant further states on its website that "Our Commitment To Quality Is Clear," noting that "Since 1986, Morton & Bassett has always been known for uncompromised quality.  This has been our guiding star for the past 30 years."[28]

53.    In fact, so important is Defendant's tagline, "Our Commitment To Quality Is Clear," to Defendant's business, that it has gone as far as to trademark that phrase.[29]

54.    Defendant has also previously remarked that "The Morton & Bassett Trade Dress makes a unique impression on the consumer, demonstrates the high quality of the product, and give

---

[23] Morton & Bassett, "About Morton & Bassett," https://mortonbassett.com/pages/about-morton-bassett (last accessed May 24, 2022).

[24] *Id.*

[25] *Id.*

[26] Morton & Bassett, "Our Commitment to Quality Is Clear," https://mortonbassett.com/pages/our-commitment-to-quality-is-clear (last accessed May 24, 2022).

[27] *Id.*

[28] *Id.*

[29] Trademarkia, "Morton & Bassett Spices Trademark Information," https://trademark.trademarkia.com/morton--bassett-spices-87821159.html (last accessed May 24, 2022).

[Morton & Bassett] a signature look that differentiates it from the rest of what has become a crowded industry. Both on the shelf and in the kitchen, [Morton & Bassett's] products have always stood apart because of their unique appearance. The Morton & Bassett Trade Dress had led [it] to adopt slogans including . . . 'Our Commitment To Quality Is Clear.'"[30]

55.    Defendant has also remarked that "[Morton & Bassett] and its products have a significant presence both on and offline. They have been featured in the *San Francisco Chronicle*, *Cooks Illustrated Magazine*, and hundreds of other websites and blogs. The Morton & Bassett Trade Dress is also featured in extensive point-of-sale promotional materials."[31]

56.    Indeed, Defendant specifically claims directly on the packaging of the Products that "Our Commitment To Quality Is Clear" as the following examples demonstrate:




57.    Defendant has also recognized the importance of the Product packaging noting on its website that "Since our start in 1986, we were the first to package spices in clear packaging. We've

---

[30] *Morton & Bassett, LLC v. Organic Spices, Inc.*, Case No. 4:15-cv-01849-HSG (Apr. 24, 2015), Dkt. 1, ¶ 15.
[31] *Id.*, ¶ 19.

always been very proud of the quality products inside the bottles, and we want everyone to see it."[32]

58.     Defendant has credited its emphasis on quality and the appearance of quality in generating sales: "[Morton & Bassett's] long standing position in the spice market, its recognizable Morton & Bassett Trade Dress, and nationwide recognition for producing the best quality spices has helped [Morton & Bassett] grow into one of the largest spice producers in the country.  In 2014 alone, [Morton & Bassett] sold approximately four million jars of spices."[33]

59.     However, Defendant's marketing tagline placed directly on the Products of "Our Commitment To Quality Is Clear" is materially deceptive, false and misleading in light of the presence (or risk) of Heavy Metals in the Products.  Reasonable consumers would not view Defendant's herbs and spices as "quality" provided that the product contains (or risks containing) toxic Heavy Metals, a fact nowhere disclosed on the label.

60.     The foregoing statements on the website and the label demonstrate that Defendant knows that reasonable consumers consider it important that the Products are safe and free from toxins such as the Heavy Metals.

61.     Based on Defendant's decision to tout the Products as trustworthy as well as the fact that the existence of Heavy Metals pertains to matters of safety, Defendant had a duty to tell the full truth about the presence (or risk) of Heavy Metals.

62.     Separately from the tagline, however, the Products' labels are materially deceptive, false and misleading given Defendant's omission about the presence (or risk) of Heavy Metals as described above.

## FED. R. CIV. P. 9(b) ALLEGATIONS

63.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

---

[32] *See supra* n. 25.
[33] *Morton*, Case No. 4:15-cv-01849-HSG (Apr. 24, 2015), Dkt. 1, ¶ 20.

64.     **WHO**: Defendant made material misrepresentations and omissions of fact in its packaging of the Products by misrepresenting through the phrase "Our Commitment To Quality Is Clear" and omitting, the presence (or risk) of Heavy Metals.

65.     **WHAT**: Defendant's conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products do not contain (or risk containing) Heavy Metals. Defendant omitted from Plaintiffs and Class members that the Products contain (or risk containing) Heavy Metals. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals.  Defendant's marketing tagline on the label, "Our Commitment To Quality Is Clear," was also deceptive by misrepresenting the quality and safety of the Products given that they contain (or risk containing) Heavy Metals, a fact nowhere disclosed on the label.

66.     **WHEN**: Defendant made material misrepresentations and omissions detailed herein, including omitting that the Products do contain (or risk containing) Heavy Metals, continuously throughout the applicable relevant periods.

67.     **WHERE**: Defendant's misrepresentations and omissions were made on the labeling and packaging of the Products and were thus viewed by every purchaser, including Plaintiffs and the Class, at the point of sale in every transaction. The Products are sold worldwide in brick-and-mortar stores and online stores nationwide.

68.     **HOW**: Defendant made misrepresentations and omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals. And as discussed in detail throughout this Complaint, Plaintiffs and Class members read and relied on Defendant's label misrepresentations and omissions before purchasing the Products.

69.     **WHY**: Defendant made misrepresentations and omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals for the express purpose of inducing Plaintiffs and Class members to purchase the Products at a substantial price premium or more than they would have paid had they known the truth about the Products. As such, Defendant profited by

selling the Products to at least thousands of consumers throughout the nation, including Plaintiffs and the Class members.

## CLASS ACTION ALLEGATIONS

70.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiffs bring this action and seek certification of the following proposed class:

> **Class**: All persons within the United States who purchased the Products during the fullest period of law.

71.     Plaintiffs also bring this action on behalf of the following State Subclasses:

> **California Subclass**: All persons who purchased the Products in the State of California during the fullest period of law.

> **Illinois Subclass**: All persons who purchased the Products in the State of Illinois during the fullest period of law.

(The Class, California Subclass and Illinois Subclass are collectively referred to as the "Classes.")

72.     Excluded from the proposed Classes are the Defendant, and any entities in which the Defendant has controlling interest, the Defendant's agents, employees and its legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and all resellers of the Products.

73.     Plaintiffs reserve the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

74.     Plaintiffs further reserve the right to amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

75.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** At this time, Plaintiffs do not know the exact number of members of the Classes; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiffs believe that the Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are thousands, if

not hundreds of thousands, of putative Class members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail and/or electronic mail or other appropriate digital means, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

76.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

a.   whether the Products contain (or risk containing) toxic Heavy Metals;

b.   whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

c.   whether the amount of toxic Heavy Metals in the Products is material to a reasonable consumer;

d.   whether Defendant had a duty to disclose that its Products contained  (or risked containing) toxic Heavy Metals;

e.   whether Plaintiffs and members of the Classes are entitled to injunctive and other equitable relief;

f.   whether Defendant made misrepresentations and/or failed to disclose material facts concerning the Products;

g.   whether Defendant's conduct was unfair and/or deceptive;

h.   whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Class members;

i.   whether Defendant breached implied warranties to Plaintiffs and the Class members;

j.   whether Defendant violated California and Illinois State consumer protection, and deceptive practice statutes and are entitled to damages and/or treble damages under such state statutes; and

k.   whether Plaintiffs and the Class members have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

77.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of those of the Class members because Plaintiffs, like other Class members, purchased, in a typical consumer setting, the Products and Plaintiffs sustained damages from Defendant's wrongful conduct.

78.   **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will fairly and adequately protect the interests of the Class members and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the Classes.

79.   **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiffs and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

80.   **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiffs seek to certify the Classes to enjoin Defendant from selling or otherwise distributing the Products until such time that Defendant can demonstrate to the Court's satisfaction that the Products are accurately labeled. The prerequisites to maintaining a class action for equitable relief are met as Defendant has

acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate equitable relief with respect to the Classes as a whole.

81.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.   The damages suffered by each individual members of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b.   Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.   The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d.   Individual joinder of all members of the Classes is impracticable;

e.   Absent a Class, Plaintiffs and members of the putative Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

f.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and members of the putative Classes can seek redress for the harm caused by Defendant.

g.   In the alternative, the Classes may be certified for the following reasons:

i.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

ii.   Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and

may substantially impair or impede the ability of other putative Class Members to protect their interests; and

iii.    Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CAUSES OF ACTION

### FIRST COUNT
**California's Unfair Competition Law ("UCL")**
**Violation of California Business & Professions Code § 17200 *et seq.*,**
**Based on Fraudulent Acts and Practices**

82.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

83.    Plaintiffs bring this claim individually and on behalf of the Class, and, in the alternative, Plaintiffs Balistreri and Crandall (the "California Plaintiffs") bring this claim individually and on behalf of the California Subclass.

84.    Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

85.    Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, misrepresentations regarding, and failing to disclose, that the Products contain (or risk containing) toxic Heavy Metals.

86.    After reviewing the packaging for the Products,  Plaintiffs, including the California Plaintiffs, purchased the Products in reliance on Defendant's misrepresentations and omissions. Plaintiffs and the California Plaintiffs would not have purchased the Products at all or would have paid less for them if they had known of Defendant's material misrepresentations and omissions regarding that the Products contain (or risk containing) toxic Heavy Metals. Plaintiffs and the Class members, and the California Plaintiffs and the California Subclass members, have all paid money for the Products.  However, Plaintiffs and the Class members, and the California Plaintiffs and the California Subclass members, did not obtain the full value or any value of the advertised products

due to Defendant's misrepresentations and omissions regarding the toxic Heavy Metals. Accordingly, Plaintiffs and the Class members, and the California Plaintiffs and the California Subclass members, have suffered injury in fact and lost money or property as a direct result of Defendant's material misrepresentations and omissions.

87.     By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code §17200.

88.     In accordance with California Business & Professions Code §17203, Plaintiffs and the California Plaintiffs seek an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign.

89.     As a result of Defendant's conduct, Plaintiffs, including the California Plaintiffs, seek restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

**SECOND COUNT**
**California's Unfair Competition Law ("UCL")**
**Violation of California Business & Professions Code § 17200 *et seq.*,**
**Based on Unlawful Acts and Practices**

90.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

91.     Plaintiffs bring this claim individually and on behalf of the Class and, in the alternative, the California Plaintiffs bring this claim individually and on behalf of the California Subclass.

92.     The violation of any law constitutes an unlawful business practice under California Business & Professions Code §17200.

93.     Defendant has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making misrepresentations and omissions of material facts, as set forth more fully herein, and violating Cal. Civ. Code § 1750 et seq., and by violating the Song-Beverly Act.

94.     By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

95.     Plaintiffs, including the California Plaintiffs, purchased the Products in reliance on Defendant's material misrepresentations and omissions as to the toxic Heavy Metals contained therein.  Plaintiffs and the California Plaintiffs would not have purchased the Products at all or would have paid less for them had they known of Defendant's misrepresentations and omissions.  Plaintiffs and the Class and the California Plaintiffs and the California Subclass members paid money for the Products.  However, Plaintiffs and the Class and the California Plaintiffs and the California Subclass members did not obtain the full value, or any value, of the advertised products due to Defendant's material misrepresentations and omissions regarding the Products.  Accordingly, Plaintiffs and the Class and the California Plaintiffs and the California Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's material misrepresentations and omissions.

96.     In accordance with California Business & Professions Code §17203, Plaintiffs, including the California Plaintiffs, seek an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign.

97.     As a result of Defendant's conduct, Plaintiffs, including the California Plaintiffs, seek restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

## THIRD COUNT
### California's Unfair Competition Law ("UCL")
#### Violation of California Business & Professions Code § 17200 *et seq.*,
#### Based on Unfair Acts and Practices

98.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

99.     Plaintiffs bring this claim individually and on behalf of the Class and, in the alternative, the California Plaintiffs bring this claim individually and on behalf of the California Subclass.

100.    Under Business & Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

101.    Defendant has engaged, and continues to engage, in conduct which is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  This conduct includes misrepresentations and failing to disclose that the Products contain (or risk containing) toxic Heavy Metals.

102.    Defendant has engaged, and continues to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§1572, 1573, 1709, 1710, 1711 against committing fraud and deceit; and (2) California Civil Code §1750 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars. Defendant gained an unfair advantage over its competitors, whose labeling, advertising, and marketing for other similar products must comply with these laws.

103.    Defendant's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased the Products at all or would have paid less for them but for Defendant's misrepresentations and omissions regarding the presence (or risk) of toxic Heavy Metals in the Products.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on Defendant's labels, and thus also its misrepresentations and omissions, and injury results from ordinary use of the Products, consumers could not have reasonably avoided such injury.  *Davis v. Ford Motor Credit Co*., 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

104.     By committing the acts alleged above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

105.     Plaintiffs, including the California Plaintiffs, purchased the Products based on Defendant's labels, which misrepresented and omitted the presence (or risk) of toxic Heavy Metals in the Products.  Plaintiffs and the California Plaintiffs would not have purchased the Products at all or would have paid less for them but for Defendant misrepresenting and failing to disclose that they contained toxic Heavy Metals.  Plaintiffs and the Class and the California Plaintiffs and the California Subclass members paid money for the Products.  However, Plaintiffs and the Class and the California Plaintiffs and the California Subclass members did not obtain the full value or any value of the Products due to Defendant's misrepresentations and omissions regarding the nature of said Products.  Accordingly, Plaintiffs and the Class and the California Plaintiffs and the California Subclass members suffered an injury in fact and lost money or property as a direct result of Defendant's material misrepresentations and omissions.

106.     Because Defendant's conduct is ongoing, the Plaintiffs, including the California Plaintiffs, seek an order enjoining Defendant from continuing to conduct business through its fraudulent conduct and further seek an order requiring Defendant to conduct a corrective advertising campaign in accordance with California Business & Professions Code §17203.

107.     As a result of Defendant's conduct, Plaintiffs, including the California Plaintiffs, seek restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

## FOURTH COUNT
### Violations of California's False Advertising Law, California Business & Professions Code §§ 17500, et seq. ("FAL")

108.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

109.   Plaintiffs bring this claim individually and on behalf of the Class and, in the alternative, the California Plaintiffs bring this claim individually and on behalf of the California Subclass.

110.   California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

111.   As set forth herein, Plaintiffs, including the California Plaintiffs, purchased the Products based on Defendant's labels, which constituted advertising and which misrepresented and omitted the presence (or risk) of toxic Heavy Metals in the Products.

112.   Plaintiffs and the California Plaintiffs would not have purchased the Products at all or would have paid less for them but for Defendant misrepresenting and failing to disclose that they contained toxic Heavy Metals.

113.   Plaintiffs and the Class and the California Plaintiffs and the California Subclass paid money for the Products.  However, they did not obtain the full value or any value of the Products due to Defendant's misrepresentations and omissions regarding the nature of the Products. Accordingly, Plaintiffs and the Class and the California Plaintiffs and the California Subclass members suffered an injury in fact and lost money or property as a direct result of Defendant's material misrepresentations and omissions.

114.   Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these Products in the future and hope to rely on Defendant's marketing and packaging.

115.   Plaintiffs and members of the Class and the California Plaintiffs and California Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

### FIFTH COUNT
**Violations of California's Consumers Legal Remedies Act
Cal. Civ. Code § 1750 et seq. ("CLRA")**

116.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

117.     Plaintiffs bring this claim individually and on behalf of the Class and, in the alternative, the California Plaintiffs bring this claim individually and on behalf of the California Subclass .

118.     Plaintiffs, including the California Plaintiffs, purchased Defendant's Products for household use.

119.     The acts and practices of Defendant as described above were intended to deceive Plaintiffs and the Class and the California Plaintiffs and the California Subclass members as described herein, and have resulted, and will result, in damages to Plaintiffs and members of the Class and the California Plaintiffs and the California Subclasses.   These actions violated, and continue to violate, the California Consumers Legal Remedies Act ("CLRA") in at least the following respects:

   a.   In violation of California Civil Code §1770(a)(5) of the CLRA, Defendant's acts and practices constitute misrepresentations and omissions that the Products have characteristics, uses, and/or benefits, which they do not;

   b.   in violation of California Civil Code §1770(a)(7) of the CLRA, Defendant's acts and practices constitute misrepresentations and omissions that the Products are of a particular quality, which they are not; and

   c.   in violation of California Civil Code §1770(a)(9) of the CLRA, Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised.

120.     By committing the acts alleged above, Defendant has violated the CLRA.

121.     Plaintiffs and the Class and the California Plaintiffs and California Subclass members suffered injuries caused by Defendant's misrepresentations and omissions because they were induced to purchase the Products they would not have otherwise purchased or would have paid less for if they had known that they contained (or risked containing) toxic Heavy Metals.

122.     In compliance with the provisions of California Civil Code §1782, Plaintiffs sent written notice to Defendant on January 6, 2022, informing Defendant of their intention to seek

damages under California Civil Code §1750, *et seq*. The letters stated that they were sent on behalf of Plaintiff Balistreri and all other persons similarly situated. Defendant has failed to respond to or remedy the issues raised in the notice letter regarding the Products. Accordingly, the California Plaintiffs and California Subclass seek monetary damages from Defendant for its violations of the CLRA.

123.    Plaintiffs and the Class and the California Plaintiffs and California Subclass members are also entitled to, pursuant to California Civil Code §1780, an order enjoining the above-described wrongful acts and practices of Defendant, and any other relief deemed appropriate and proper by the Court under California Civil Code §1780.

**SIXTH COUNT**
**Breach of Implied Warranty Under the Song-Beverly Act**
**Cal. Civ. Code § 1790 et seq.**

124.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

125.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and, in the alternative, the California Plaintiffs bring this claim individually and on behalf of the California Subclass against Defendant.

126.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq*., every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

127.    The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

128.    Plaintiffs and the Class and the California Plaintiffs and California Subclass members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

129.    Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

130.    Defendant impliedly warranted to retail buyers that the Products were merchantable in that they: (a) would pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the Products were unsafe and contained (or risked containing) toxic Heavy Metals.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used, which is consumption by consumers.

131.    Plaintiffs and the Class and the California Plaintiffs and California Subclass members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

132.    The Products were not altered by Plaintiffs or the Class or the California Plaintiffs or California Subclass members.

133.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiffs and the Class and the California Plaintiffs and California Subclass members.

134.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the Class and the California Plaintiffs and California Subclass members have been injured and harmed because they would not have purchased the Products or would have paid less for them if they knew the truth about the Products, namely, that they contained (or risk containing) toxic Heavy Metals.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEVENTH COUNT**
**Breach of Implied Warranty of Merchantability**

135.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

136.    Plaintiffs bring this claim individually and on behalf of the members of the Class and in the alternative the California Plaintiffs bring this claim individually and on behalf of the California Subclass and Plaintiff Matthews (the "Illinois Plaintiff") brings this claim individually and on behalf of the Illinois Subclass against Defendant under the laws of those respective states.

137.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Classes.

138.    There was a sale of goods from Defendant to Plaintiffs and the Classes.

139.    As set forth herein, Defendant manufactured and sold the Products, and prior to the time the Products were purchased by Plaintiffs and the members of the Classes, impliedly warranted that the Products were of merchantable quality and fit for their ordinary use (consumption by consumers).

140.    Defendant impliedly warranted to retail buyers that the Products were merchantable in that they: (a) would pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.    Defendant breached these implied warranties because the Products were unsafe and contained (or risked containing) toxic Heavy Metals.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used, which is consumption by consumers.

141.    Plaintiffs and the Class members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

142.    The Products were not altered by Plaintiffs or the Class members.

143.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiffs and the Class members.

144.    Defendant was on notice of this breach as it was aware of the inclusion of Heavy Metals in the Products, including based on its purported quality control of the Products, and based on the public investigation by Consumer Reports that showed the Products contain Heavy Metals.

145.    Privity is not required under California and Illinois law where, as here, Plaintiffs are third-party beneficiaries of Defendant's contracts with wholesalers or retail sellers and relied on Defendant's packaging in making their purchases.  Plaintiffs and members of the Classes are third-party beneficiaries because the Products passed into commerce with warranties that were designed for the benefit of the end-user and not for the benefit of the wholesaler or retailer.

146.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the Class members have been injured and harmed because they would not have purchased the Products or would have paid less for them if they knew the truth about the Products, namely, that they contained (or risked containing) toxic Heavy Metals.

147.    On January 6, 2022, Plaintiffs, through counsel, provided notice to Defendant, apprising Defendant of its breach of warranties.  The letters stated that they were sent on behalf of Plaintiff Balistreri and all other persons similarly situated. Defendant has failed to respond to or remedy the issues raised in the notice letter regarding the Products.

148.    Plaintiffs, on behalf of themselves and the members of the Classes, seek actual damages for Defendant's failure to deliver goods that conform to its implied warranties and resulting breach.

## EIGHTH COUNT
### Fraud

149.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

150.    Plaintiffs bring this claim individually and on behalf of the Class under California law or in the alternative the California Plaintiffs bring this claim individually and on behalf of the California Subclass and the Illinois Plaintiff brings this claim individually and on behalf of the Illinois Subclass against Defendant under the laws of those respective states.

151.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

a. **WHO**: Defendant made material misrepresentations and omissions of fact in its packaging of the Products by misrepresenting through the phrase "Our Commitment To Quality Is Clear," and omitting, the presence (or risk) of Heavy Metals.

b. **WHAT**: Defendant's conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products do not contain (or risk containing) Heavy Metals. Defendant omitted from Plaintiffs and Class members that the Products contain (or risk containing) Heavy Metals. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals. Defendant's marketing tagline on the label, "Our Commitment To Quality Is Clear," was also deceptive by misrepresenting the quality and safety of the Products given that they contain (or risk containing) Heavy Metals, a fact nowhere disclosed on the label.

c. **WHEN**: Defendant made material misrepresentations and omissions detailed herein, including omitting that the Products do contain (or risk containing) Heavy Metals, continuously throughout the applicable relevant periods.

d. **WHERE**: Defendant's misrepresentations and omissions were made on the front labeling and packaging of the Products and were thus viewed by every purchaser, including Plaintiffs, at the point of sale in every transaction. The Products are sold worldwide in brick-and-mortar stores and online stores nationwide.

e. **HOW**: Defendant made misrepresentations and omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals. And as

discussed in detail throughout this Complaint, Plaintiffs and Class members read and relied on Defendant's label misrepresentations and omissions before purchasing the Products.

f.  **WHY**: Defendant made misrepresentations and omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals for the express purpose of inducing Plaintiffs and Class members to purchase the Products at a substantial price premium or more than they would have paid had they known the truth about the Products. As such, Defendant profited by selling the Products to at least thousands of consumers throughout the nation, including Plaintiffs and the Class members.

152.    As alleged herein, Defendant made these material misrepresentations and omissions in order to induce Plaintiffs and Class members to purchase the Products.

153.    As alleged in detail herein, Defendant knew the misrepresentations and omissions regarding the Products were false and misleading but nevertheless made such misrepresentations and omissions on the Products' labeling. In reliance on these misrepresentations and omissions, Plaintiffs and Class members were induced to, and did, pay monies to purchase the Products.

154.    Had Plaintiffs and the Class members known the truth about the Products, they would not have purchased them or would have paid less for them.

155.    As a proximate result of the fraudulent conduct of Defendant, Plaintiffs and Class members paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## NINTH COUNT
### Unjust Enrichment

156.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

157.    Plaintiffs bring this claim individually and on behalf of the Class under California law or in the alternative the California Plaintiffs bring this claim individually and on behalf of the California Subclass and the Illinois Plaintiff brings this claim individually and on behalf of the

Illinois Subclass against Defendant under the laws of those respective states.

158.     Plaintiffs and the Class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

159.     Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiffs and the Class members.

160.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and the proposed Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant made misrepresentations and omitted that the Products contained (or risked containing) toxic Heavy Metals. This caused injuries to Plaintiffs and members of the proposed Classes because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

161.     Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiffs and the Class members.

162.     Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

163.     Plaintiffs and the Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

164.     As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have suffered in an amount to be proven at trial.

## TENTH COUNT
### Violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1, et seq.

165.     Plaintiff Matthews incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

166.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1 et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

167.     The Illinois Plaintiff and other members of the Illinois Subclass, as purchasers of the Products, are consumers within the meaning of the ICFA given that Defendant's business activities

involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

168.    Defendant's conduct in misrepresenting the benefits of its Products constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentations, and unfair practices in the conduct of Defendant's trade or commerce.

169.    Defendant also knowingly concealed, suppressed, and consciously omitted material facts to the Illinois Plaintiff and other members of the Illinois Subclass knowing that consumers would rely on the advertisements and packaging and Defendant's uniform representations to purchase the Products.

170.    The Illinois Plaintiff and the other Illinois Subclass members reasonably relied on Defendant's representations that the Products were safe for personal use and, due to Defendant's omissions, the Illinois Plaintiff and the Illinois Subclass members relied on Defendant's labeling to conclude that the Product was not contaminated with any dangerous substance, including Heavy Metals.

171.    Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

172.    Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have.  815 ILCS § 505/2; 815 ILCS § 510/2(7).

173.    Defendant advertised the Products with intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

174.    Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

175.    Defendant engaged in misleading and deceptive advertising that represented that the Products were safe.  Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products were exposed to and would be impacted by its misrepresentation and omissions and would reasonably

believe that the Products were safe for personal use and did not contain any dangerous contaminants, including Heavy Metals. However, the Products are not safe, as they contain or risk containing Heavy Metals.

176. Defendant intended that the Illinois Plaintiff and each of the other Illinois Subclass members would reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the true nature of the Products.

177. Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused the Illinois Plaintiff and each of the other Illinois Subclass members to be deceived about the true nature of the Products.

178. The Illinois Plaintiff and Illinois Subclass members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Products.

179. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, the Illinois Plaintiff and the Illinois Subclass members have suffered ascertainable loss of money caused by Defendant's misrepresentations.

180. Had they been aware of the true nature of the Products, the Illinois Plaintiff and Illinois Subclass members either would have paid less for the Products or would not have purchased them at all.

181. The Illinois Plaintiff and the Illinois Subclass members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. The Illinois Plaintiff and Illinois Subclass members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**ELEVENTH COUNT**
**Violation of the Illinois Uniform Deceptive Trade Practices Act,**
**ILCS §§ 510/2, et seq.**

182. Plaintiff Matthews incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

183.    The Illinois Plaintiff brings this Count on behalf of herself and the Illinois Subclass for violations of the Illinois Uniform Deceptive Trade Practices Act, ILCS §§ 510/2, et seq.

184.    Defendant constitutes a "person" as defined by 815 ILCS §§ 510/1(5).

185.    Defendant engaged in deceptive trade practices in the conduct of their business, in violation of 815 ILCS §§ 510/2(a), including:

    a.   Defendant represented to Illinois Plaintiff and the Illinois Subclass that the Products had approval or characteristics that they did not have;

    b.   Defendant represented to Illinois Plaintiff and the Illinois Subclass that the Products were of a particular standard, quality, or grade when they were actually of another;

    c.   Defendant advertised to Illinois Plaintiff and the Illinois Subclass goods with intent not to sell them as advertised;

    d.   Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

    e.   Defendant represented that consumers' purchases of the Products conferred or involved rights that the transactions did not have or involve.

186.    The facts that Defendant misrepresented, concealed, suppressed or omitted the presence of dangerous contaminants, including Heavy Metals, in the Products as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

187.    Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and was likely to deceive a consumer acting reasonably in the same circumstances.

188.    Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

189.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

190.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Illinois Plaintiff and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

191.    As a direct and proximate result of Defendant's deceptive acts and practices, Illinois Plaintiff and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products.

192.    Illinois Plaintiff and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## TWELFTH COUNT
### Negligent Failure to Warn

193.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

194.    Plaintiffs bring this claim individually and on behalf of the Class under California law or in the alternative the California Plaintiffs bring this claim individually and on behalf of the California Subclass and the Illinois Plaintiff brings this claim individually and on behalf of the Illinois Subclass against Defendant under the laws of those respective states.

195.    At all relevant times, Defendant was responsible for manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling the Products and its packaging.  At all relevant times, it was reasonably foreseeable by Defendant that the use of the Products in their intended manner involved substantial risk of injury and was unreasonably dangerous to Plaintiffs and the Class members as the ultimate users of the Products.

196.    At all relevant times, Defendant knew or had reason to know of the risk of injury and the resultant harm that the Products posed to Plaintiffs and the Class members, as the problems discussed throughout existed at the time of its manufacturing, inspection, distribution, labeling, marketing, advertising, and/or sale.

197.    Defendant as the manufacturer, tester, distributor, marketer, advertiser, and/or seller of the Products had a duty to warn Plaintiffs and the Class members of all dangers associated with the intended use of the Products.

198.    At a minimum, the duty arose for Defendant to warn consumers that the use of the Products was unreasonably dangerous.

199.    Defendant was negligent and breached its duty by negligently failing to provide warnings to consumers and users of the Products, including Plaintiffs and the Class members, regarding the true nature of the Products and their risks and potential dangers.

200.    Defendant was negligent and breached its duty of care by concealing the risks of, and failing to warn consumers that the Products contain or risk containing, Heavy Metals known to cause adverse health effects in humans.

201.    Defendant knew, or through the exercise of reasonable care, should have known of the problems discussed and resulting dangers associated with consuming the Products, and knew that Plaintiffs and Class members could not reasonably be aware of those risks.  Defendant failed to exercise reasonable care in providing Plaintiffs and the Class members with adequate warnings.

202.    As a direct and proximate result of Defendant's failure to adequately warn consumers that the use of the Products, including their intended use, could cause and has caused injuries and other damages, Plaintiffs and the Class members have suffered damages, as described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all members of the proposed Classes the following relief against Defendant:

a.   That the Court certify the Classes under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the members of the Classes;

b.   That the Court declare that Defendant's conduct violates the statutes referenced herein;

c.   That the Court preliminarily and permanently enjoin Defendant from conducting business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

d.   That the Court order preliminary and injunctive relief requiring Defendant to disclose that the Products contain or risk containing toxic Heavy Metals;

e.   That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

f.   That the Court order Defendant to notify each and every individual who purchased the Products of the pendency of the claims in this action to give such individuals an opportunity to obtain restitution from Defendant;

g.   For an award of compensatory damages, the amount of which is to be determined at trial;

h.   For punitive damages;

i.   For actual and treble damages, declaratory, and injunctive relief under the Illinois Consumer Fraud Act, 815 ILCS §§ 505/1, et seq. and Illinois Uniform Deceptive Trade Practices Act,  ILCS §§ 510/2, et seq.;

j.   That the Court grant Plaintiffs' reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure §1021.5, California Civil Code §1780(d), Illinois State law, the common fund doctrine, and/or any other appropriate legal theory; and

k.   That the Court grant such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: May 31, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___/s/ L. Timothy Fisher_____
          L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Email:  ltfisher@bursor.com
         slitteral@bursor.com

Kevin Laukaitis*
Jonathan Shub (SBN 237708)
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

Gary E. Mason*
Danielle L. Perry (SBN 292120)
**MASON LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
gmason@masonllp.com
dperry@masonllp.com

Lori G. Feldman (*Pro Hac Vice*)
**GEORGE GESTEN MCDONALD PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York  10520
Tel: 917-983-9321
lfeldman@4-justice.com
eservice@4-justice.com

Brittany Brown*
David George*
**GEORGE GESTEN MCDONALD PLLC**
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33463

Michael Liskow (State Bar No. 243899)
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Floor
New York, New York  10036

Tel: 212-899-1765
Fax: 332-206-2073
mliskow@calcaterrapollack.com

***Pro Hac Vice Application Forthcoming***

*Attorneys for Plaintiffs and the Proposed Classes*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2
I, L. Timothy Fisher, declare as follows:

3
1.      I am an attorney at law licensed to practice in the State of California and a member

4
of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs

5
Jeanne Matthews, Kelly Balistreri and Scott Crandall.  Ms. Matthews is a resident of Evanston,

6
Illinois.  Ms. Balistreri is a resident of Carmel, California.  Mr. Crandall is a resident of Redcrest,

7
California.  I have personal knowledge of the facts set forth in this declaration and, if called as a

8
witness, I could and would competently testify thereto under oath.

9
2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code

10
Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the

11
Northern District of California as Defendant is located in this District.

12
I declare under the penalty of perjury under the laws of the State of California and the United

13
States that the foregoing is true and correct and that this declaration was executed at Walnut Creek,

14
California this 31st day of May 2022.

15

16
                    _____*/s/ L. Timothy Fisher*_____
                              L. Timothy Fisher

17

18

19

20

21

22

23

24

25

26

27

28